# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE R. HENSLEE,<br><br>                        Plaintiff,<br>  vs.<br><br>C. WILSON; V. SOSA; JOHN DOE #1; JOHN DOE #2; JOHN DOE #3,<br><br>                        Defendants. | CASE NO. 08cv1015 - IEG - LSP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>[Doc. No. 35] |

In his Second Amended Complaint ("SAC"), plaintiff Lance R. Henslee makes three claims: (1) an Eighth Amendment failure to protect claim; (2) an Eighth Amendment excessive force claim; and (3) a First Amendment claim for retaliation. Presently, Defendants filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff did not file an opposition and the Court took this matter under submission without oral argument.

**BACKGROUND**

I.    The Parties

Plaintiff Lance R. Henslee is a California inmate currently incarcerated at High Desert State Prison in Susanville, California. (SAC ¶ 62.) Defendant C. Wilson, John Doe #1 ("Officer Wilson"), John Doe #2, and John Doe #3 reside in San Diego and are employed as a Correctional Officers with the California Department of Corrections and Rehabilitation ("CDCR"). (SAC at 2). Defendant V. Sosa ("Sgt. Sosa") resides in San Diego and is employed as a Correctional Sergeant. Id.

II.     Factual Background

Plaintiff alleges the following facts. On August 13, 2007, while alone in his cell, Plaintiff called Officer Newsham to report that his cellmate had previously threatened him. Approximately five minutes later, Sgt. Sosa approached Plaintiff's cell and asked him about the problem. Plaintiff reiterated his concern and asked Sgt. Sosa to prevent his cellmate from returning because the cellmate was "acting bizarre" and had threatened Plaintiff. (SAC ¶ 6.) Sgt. Sosa stated he would place Plaintiff's cellmate in a holding cell upon his return, where he would remain until he was rehoused.

Approximately fifteen minutes later, Plaintiff saw Officer Wilson escorting Plaintiff's handcuffed cellmate into the housing unit. Officer Wilson stopped to talk with Sgt. Sosa, shook his head "no" several times, and looked at Plaintiff's cell door. Officer Wilson grabbed Plaintiff's cellmate and walked him over to the cell while Sgt. Sosa and four other officers watched from their posts. When they reached the cell door, Officer Wilson told Plaintiff to "cuff-up."[1] (SAC ¶ 16.) In response, Plaintiff informed Officer Wilson of his prior conversation with Sgt. Sosa and voiced his concern that his cellmate's return would spark serious violence. Officer Wilson told Plaintiff to go to the back of the cell or Wilson would enter the cell to fight him.

Plaintiff, uncuffed, walked to the back of the cell and Officer Wilson motioned the tower officer to open the cell door. As the cell door opened, Plaintiff again asked Officer Wilson not to put his cellmate back in the cell. Officer Wilson told Plaintiff to sit at the rear of the cell. Officer Wilson maneuvered Plaintiff's cellmate into the cell and told the tower to close the door.

Fearing for his safety, Plaintiff waited until the door was closed and then immediately pinned his cellmate to the door to prevent Officer Wilson from removing his handcuffs through the food tray port. Officer Wilson asked the tower officer to open the door. As the cell door was opening, Plaintiff released his cellmate and returned to the rear of the cell. Officer Wilson removed the cellmate, sprayed Plaintiff with pepper-spray, and informed Plaintiff of his intention to write him up for battery of an inmate. Officer Wilson took the cellmate to a holding cell where the cellmate was kept until he was rehoused.

---

[1] Although Plaintiff does not define this term, the Court presumes "cuff-up" means Plaintiff should position his arms so handcuffs may be placed on him.

Officer Wilson returned and verbally threatened neighboring inmates against being witnesses for Plaintiff. Thereafter, Officer Wilson allegedly threatened Plaintiff against filing a complaint and said "things could get a lot worse if [Plaintiff] pursued the matter." (SAC ¶ 39.) While passing out dinner trays that evening, Officer Wilson allegedly removed most of the food from Plaintiff's tray and asked Plaintiff how he liked the "diet tray." (SAC ¶ 40.) Officer Wilson then came to Plaintiff's cell door holding a letter and told Plaintiff "he was sending [Plaintiff's] letter back to the mailroom and that [Plaintiff] would not be receiving anything while he was working." (SAC ¶ 41).

On August 14, 2007, Plaintiff filed a staff complaint against Sgt. Sosa and Officer Wilson, alleging a failure to protect and excessive force. On August 22, 2007, the prison conducted an Institutional Classification Committee Hearing. (SAC ¶ 55-57). Officer Wilson escorted Plaintiff to the hearing and told Plaintiff "he did not want to hear [Plaintiff] say his name at all." (SAC ¶ 57). Officer Wilson threatened to withhold evening meals, showers, and mail. Id. After the hearing, Officer Wilson escorted Plaintiff back to Building 7, made sure Plaintiff missed his shower, gave Plaintiff a "diet tray," and withheld Plaintiff's mail. (SAC ¶ 58).

Subsequently, Chief Deputy Warden Silva Garcia ordered Plaintiff be rehoused at a different facility. (SAC ¶ 59). When Plaintiff received his property after his move to Facility 3, Plaintiff's T.V. was stolen and his other personal property destroyed. (SAC ¶ 60).

Plaintiff exhausted his original staff complaint, alleging excessive force and failure to protect, at the third or Director's level on April 8, 2008. (SAC at 6).

III.     Procedural Background

On February 5, 2009, the Court dismissed Plaintiff's Eighth Amendment failure to protect claim and his Eighth Amendment excessive force claim. However, the Court declined to dismiss Plaintiff's retaliation claim. On May 22, 2009, Plaintiff filed a Second Amended Complaint seeking: (1) an injunction preventing Defendants from contacting, harassing, or interviewing any of Plaintiff's witnesses to prevent retaliation; (2) damages in the sum of $11.00; (3) punitive damages in the sum of $250,000; and (4) $375.00 for legal fees incurred. (SAC at 7).

//

//

## LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544 (2007). The court's review is limited to the contents of the complaint and it must accept all factual allegations pled in the complaint as true, drawing all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). Notwithstanding this deference, it is improper for a court to assume "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). Furthermore, a court need not credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Failure to exhaust administrative remedies is an affirmative defense that a prison official must raise and prove. See Jones v. Bock, 549 U.S. 199, 212-17 (2007) (explaining that inmates are not required to plead specifically or demonstrate exhaustion in their complaints). However, unlike in the standard 12(b)(6) context, "[i]n deciding a motion to dismiss for failure to exhaust non judicial remedies, the court may look beyond the pleadings and decide the disputed issues of fact." Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

## DISCUSSION

A.   Failure to Protect Claim and Excessive Force Claims

Although Plaintiff does not explicitly make these claims in his Second Amended Complaint, the Court interprets his factual allegations as an attempt to assert an Eighth Amendment failure to protect claim and an Eighth Amendment excessive force claim. Plaintiff alleges Officer Wilson used excessive force when Officer Wilson pepper-sprayed Plaintiff in his cell. Furthermore, Plaintiff alleges Sgt. Sosa failed to protect him from being pepper-sprayed by Officer Wilson.

On February 5, 2009, the Court dismissed Plaintiff's failure to protect and excessive force

1  claims. (Doc. No. 19.) In the February 5 order, the Court detailed the claims' deficiencies and
2  granted leave to amend to cure those deficiencies.

3  In his Second Amended Complaint, Plaintiff fails to make any substantive changes to these
4  two claims. (SAC ¶ 1-36.) Therefore, Plaintiff has not cured the deficiencies detailed in the Court's
5  February 5 order. (Doc. No. 19.) Accordingly, the Court dismisses Plaintiff's failure to protect and
6  excessive force claims one last time without prejudice.

7  B.   Retaliation Claims

8  Plaintiff asserts Officer Wilson retaliated against Plaintiff at three different junctures. First,
9  immediately following the pepper-spray incident, Officer Wilson allegedly threatened Plaintiff against
10 filing a staff complaint, threatened neighboring inmates against being witnesses, withheld Plaintiff's
11 food, and withheld Plaintiff's mail. Second, at the time of the Institutional Classification Committee
12 Hearing, Officer Wilson threatened Plaintiff, caused Plaintiff to miss a meal, and caused Plaintiff to
13 miss a shower. Third, at the time of Plaintiff's rehousing, Plaintiff alleges his television was stolen
14 and his personal property destroyed.

15 Under the Prison Litigation Reform Act ("PLRA") state prisoners must exhaust available
16 administrative remedies before filing § 1983 actions in federal court. See 42 U.S.C. § 1997e(a).
17 Proper exhaustion means "a prisoner must complete the administrative review process in accordance
18 with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal
19 court." Woodford v.Ngo, 548 U.S. 81, 88 (2006); see also Ngo v. Woodford, 539 F. 3d 1108, 1109-10
20 (9th Cir. 2008). Exhaustion is required under this provision regardless of the type of relief sought and
21 the type of relief available through administrative procedures. See Booth v. C. O. Churner, 532 U.S.
22 731, 741 (2001). The exhaustion requirement applies to all claims relating to prison life that do not
23 implicate the duration of the prisoner's sentence. See Porter v. Nussle, 534 U.S. 516, 524-32 (2002);
24 see also Roles v. Maddox, 439 F. 3d 1016, 1018 (9th Cir. 2006). However, an inmate's compliance
25 with the PLRA exhaustion requirement as to some, but not all claims does not warrant dismissal of
26 the entire action. Jones, 549 U.S. at 212-17; Lira v. Herrera, 427 F. 3d 1164, 1175 (9th Cir. 2005).
27 If a prisoner's complaint consists of both exhausted and unexhausted claims, the court should only
28 dismiss the unexhausted claims. Lira, 427 F. 3d at 1175.

Here, as a state prisoner, Plaintiff must exhaust all administrative remedies before filing this § 1983 action in federal court. See 42 U.S.C. § 1997e(a). Under the California Code of Regulations inmates have the right to file administrative appeals alleging misconduct by correctional officers. Cal. Code Regs. Tit. 15 § 3084.1(e). In order to exhaust the administrative remedies an inmate must proceed through several levels: (1) informal level; (2) first formal level appeal; (3) second formal level appeal; and (4) third formal level of appeal to the Director of the California Department of Corrections and Rehabilitation. Cal. Code Regs. Tit. 15 § 3084.5.

The Court must determine whether Plaintiff exhausted his retaliation claim. Lira, 427 F. 3d at 1175. Plaintiff alleges he exhausted administrative remedies by submitting a staff complaint on a CDC-602 form and pursuing the claim through the third or Director's level. (SAC at 6). However, during this administrative appeals process, Plaintiff only raised his Eighth Amendment failure to protect claim and his Eighth Amendment excessive force claim. (Grannis Decl., ISO Motion ¶ 7(e)). Plaintiff did not pursue his retaliation claims during these proceedings. Therefore, Plaintiff has failed to exhaust his retaliation claims.

Without reaching the merits of Plaintiff's retaliation claims, the Court finds Plaintiff has not "exhaust[ed] available administrative remedies before filing." See 42 U.S.C. § 1997e(a). The Court dismisses Plaintiff's retaliation claims without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss in its entirety.

**IT IS SO ORDERED.**

**DATED: August 17, 2009**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**